FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 29, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KOREY L., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 1:18-cv-03177-SMJ <br><br> **ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, are the parties' cross-motions for summary judgment, ECF Nos. 9[1] & 13. Plaintiff appeals the Administrative Law Judge's ("ALJ") denial of Social Security Disability benefits. ECF No. 1. The Commissioner of the Social Security Administration ("SSA") asks the Court to affirm the ALJ's decision. ECF No. 13.

After reviewing the record and relevant legal authorities, the Court is fully informed. For the reasons set forth below, the Court reverses the ALJ's decision and therefore grants Plaintiff's motion and denies the Commissioner's motion.

//

---

[1] The *praecipe* is found at ECF No. 10.

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 1

## BACKGROUND[2]

On November 1, 2011, Plaintiff applied for Social Security Disability benefits. AR[3] 196, 203. The SSA denied his claims and on appeal, a federal district court granted a stipulated remand. AR 556–57. ALJ Larry Kennedy presided over the subsequent hearing on September 12, 2017. AR 492. The ALJ issued a decision unfavorable to Plaintiff. AR 467–84. That decision is final.

## ALJ FINDINGS[4]

At step <u>one</u>, the ALJ found Plaintiff had not engaged in substantial gainful activity from March 8, 2011 to December 31, 2014, the alleged closed period of disability. AR 473.

At step <u>two</u>, the ALJ found Plaintiff has the following severe impairments: spina bifida, history of right tibia fracture with right lower extremity nerve damage, and right knee impairment. AR 473.

At step <u>three</u>, the ALJ found Plaintiff's impairments (or combination thereof) do not meet or medically equal the severity of a listed impairment. AR 476.

At step <u>four</u>, the ALJ found Plaintiff has the residual functional capacity to

---

[2] Detailed facts are contained in the administrative record and the parties' briefs.
[3] For ease and consistency with the parties' briefs, the Court cites to the consecutive pagination of the administrative record, ECF No. 6.
[4] The applicable five-step disability determination process is set forth in the ALJ's decision, AR 471–73, and the parties do not dispute that standard. Accordingly, the Court does not restate the five-step process here.

perform light work with limitations. Specifically, Plaintiff "can stand and/or walk for two to four hours per eight-hour workday." AR 476. "He cannot operate foot controls. The claimant cannot climb, balance, stoop, kneel, crouch, or crawl. He must avoid concentrated exposure to vibrations." AR 476. Further, the ALJ found Plaintiff incapable of performing any past relevant work. AR 481.

Finally, at step <u>five</u>, the ALJ alternatively found jobs exist in significant numbers in the national economy that Plaintiff can perform considering his age, education, work experience, and residual functional capacity. AR 482. Accordingly, the ALJ determined Plaintiff "has not been under a disability as defined in the Social Security Act." AR 484.

**STANDARD OF REVIEW**

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11.

Even where the evidence supports more than one rational interpretation, the

Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

## ANALYSIS

Plaintiff argues that the ALJ erred in (1) determining that Plaintiff's impairments did not meet or equal an SSA listing, (2) assessing the medical opinion evidence, (3) evaluating Plaintiff's subjective symptom testimony, (4) assessing Plaintiff's residual functional capacity ("RFC"), and (5) fulfilling his step five burden. ECF No. 10.

**A.     The ALJ did not err in determining that Plaintiff's impairments did not meet or equal an SSA listing.**

At step three, a claimant has the burden of establishing that his impairments meet or equal the criteria of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. *See Molina*, 674 F.3d at 1110. The Listing of Impairments "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a) (2016).

Here, the ALJ found the following severe impairments: spina bifida, history of right tibia fracture with right lower extremity nerve damage, and right knee impairment. AR 473. He also found that this combination of impairments did not meet or medically equal the severity of Listing 1.02A (major dysfunction of a major peripheral weight-bearing joint) and Listing 1.04 (disorders of the spine). AR 476.

Plaintiff first argues that the ALJ erred by failing to even consider Listing 11.14. ECF No. 10 at 11. But "it is unnecessary to require the [ALJ], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). The ALJ's "evaluation of the evidence" is an adequate statement of the "foundations on which the ultimate factual conclusions are based." *Id.* Here, the ALJ took "careful consideration of the entire record" and summarized the record. AR 473. He reviewed the symptoms and made specific findings of fact that were essential to the conclusion. *See* AR 473–84. Thus, the Court rejects this argument.

Plaintiff next argues that the ALJ's dismissal of Listing 1.02A relied on an incorrect legal standard of assessing ineffective ambulation. ECF No. 10 at 11–12. Ineffective ambulation, which is required under Listing 1.02A, is defined as the inability to walk without an assistive device or walk sufficiently to perform activities of daily living. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(1). Here, the ALJ did not find ineffective ambulation because Plaintiff "does not use

an assistive device and is able to walk well enough to accomplish his daily activities." AR 476. The ALJ noted that "while the record documents some gait abnormalities at times, other records show that [Plaintiff] walks with normal gait." AR 476.

Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Molina*, 674 F.3d at 1110–11. Here, the ALJ had relevant evidence based on the medical record to support his conclusion that Plaintiff ambulates effectively. For example, he cites to a May 2014 examination that found normal gait, strength, and tone in Plaintiff's lower extremities. AR 478. Because substantial evidence in the record supports the ALJ's finding and he applied correct legal standards, the ALJ did not err in determining that Plaintiff's impairments did not meet or equal an SSA listing.

**B.     The ALJ erred in assessing the medical opinion evidence.**

Nonetheless, the ALJ erred in assessing the medical opinion evidence. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "As a general rule, more weight should be given to the opinion of a treating

source than to the opinion of doctors who do not treat the claimant." *Id.* (quoting *Lester*, 81 F.3d at 830). "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Id.*

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (alteration in original) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Ryan*, 528 F.3d at 1198).

An ALJ may reject a doctor's opinion if it is brief, conclusory, and inadequately supported by clinical findings. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). An ALJ may also reject a doctor's opinion if it contradicts his or her own clinical notes or other recorded observations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Indeed, an ALJ may reject a doctor's opinion if it is internally inconsistent and inconsistent with other evidence in the record. *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602–03 (9th Cir. 1999).

//

### 1. Mary Pellicer, M.D.

In January 2012, Dr. Pellicer examined Plaintiff. She noted that Plaintiff was in no "acute distress" and was "able to get on and off the exam table without difficulty." AR 416. She also found that Plaintiff had a "decreased back range of motion," "decreased knee range of motion," and "decreased right ankle range of motion." AR 417–18. Dr. Pellicer ultimately concluded that Plaintiff can "stand and walk for 4–6 hours in an 8 hour day with more frequent breaks due to chronic right leg pain, weakness and abnormal gait." AR 419. She also concluded that Plaintiff can "sit for less than 6 hours cumulatively in an 8 hour day with more frequent breaks due to chronic back pain." AR 419. She opined that Plaintiff "would be capable of lifting and carrying 20 lbs occasionally and 10 lbs frequently due to chronic back, right leg pain, weakness and abnormal gait," and that he "can bend and squat occasionally due to chronic back and leg pain and weakness." AR 420.

A previous ALJ had accorded Dr. Pellicer's standing, walking, lifting, and postural restrictions "some weight," which this ALJ adopted and incorporated because the SSA Appeals Council found no error. AR 480. However, the ALJ rejected Dr. Pellicer's sitting restrictions because "the objective findings in the record do not support" the sitting restrictions, especially because Dr. Pellicer herself had observed that Plaintiff's "ability to bend and squat were 'fairly normal,' his back range motion was nearly normal, he was in no acute distress, and he was able

to climb on and off the exam table without difficulty." AR 480–81. Moreover, the ALJ noted that the imaging studies of Plaintiff's back did not reveal abnormalities consistent with limited capacity to sit. AR 481. The ALJ also noted that because Dr. Pellicer did not define what "frequent breaks" meant, its vagueness "limits its value" in the RFC determination. AR 481.

Plaintiff argues that the ALJ did not provide specific and legitimate reasons to assign Dr. Pellicer's opinion less than full weight. ECF No. 10 at 13. An ALJ may certainly reject a doctor's opinions if they are internally inconsistent and inconsistent with other evidence in the record, *Morgan*, 169 F.3d at 602–03, or if they are brief, conclusory, and inadequately supported by clinical findings, *Chaudhry*, 688 F.3d at 671. While the ALJ here provided specific reasons pertaining to consistency and vagueness, the Court concludes that they were not legitimate.

First, the ALJ read Dr. Pellicer's report out of context. Dr. Pellicer noted that Plaintiff's bend and squat are "fairly normal," AR 419, but concluded that Plaintiff had the ability to bend or squat only "occasionally," AR 420. By not considering the fact that Plaintiff could only bend or squat occasionally, regardless of how "normal" the bend and squat were, the ALJ did not provide a legitimate basis to give less weight to Dr. Pellicer's restrictions on sitting.

Second, Dr. Pellicer noted that Plaintiff had a "decreased" back range of motion, AR 417, which the ALJ reworded as "nearly normal," AR 481. Puzzlingly,

while acknowledging that Plaintiff's back range motion was not normal, the ALJ failed to logically articulate how this failed to support Dr. Pellicer's restrictions on sitting. Third, the ALJ pointed to Plaintiff's lack of acute distress and ability to climb on and off the exam table but did not articulate how this fails to support Dr. Pellicer's restrictions on sitting. One can certainly have limitations on sitting from back or other related problems that do not affect one's ability to climb on and off an exam table.

Relatedly, the ALJ failed to articulate how the imaging studies of Plaintiff's back did not reveal abnormalities consistent with sitting restrictions. AR 481. He provides no citation to the record[5], nor does he explain how he understood that certain abnormalities in the back affect the capacity to sit, while certain ones do not. He certainly does not reference another doctor's opinion that evaluates the imaging studies and explains what the results mean in reference to sitting restrictions.

The Court may only review the reasons an ALJ provides in his decision. *See Garrison*, 759 F.3d at 1010. Upon reviewing the reasons provided by the ALJ, the

---

[5] The Court determines based on its review of the record that the ALJ may have been referring to AR 393–94 and 410–11. In these imaging reports, Plaintiff's lumbosacral and thoracic spine were found to be not abnormal. Where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. However, the Court fails to see the inference reasonably drawn where imaging reports indicating normal lumbosacral and thoracic spine may be used to reject a sitting restriction. Thus, the Court is unable to properly review the ALJ's decision to determine if substantial evidence supports his decisions.

Court concludes that he did not provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Pellicer's sitting restrictions. Elsewhere, the ALJ notes that "the medical record does not objectively establish limitations of sitting." AR 480. To the extent the record was ambiguous about Plaintiff's potential sitting restrictions, the ALJ has a duty to conduct an appropriate inquiry, such as by subpoenaing the physicians[6] who noted sitting restrictions, submitting questions, or allowing supplementation of the record. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

The Court concludes that the ALJ's error was not "inconsequential to the ultimate nondisability determination." *Marsh*, 792 F.3d at 1173 (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)). On the contrary, the Court must treat the error as harmful because a reasonable ALJ, after fully crediting Dr. Pellicer's sitting restrictions, may reevaluate Plaintiff's RFC in light of the entire record. This error requires remand for further administrative proceedings so the ALJ can weigh Dr. Pellicer's sitting restrictions anew and determine what weight to assign to them.[7] *See Marsh*, 792 F.3d at 1173.

---

[6] In addition to Dr. Pellicer, Dr. Marie Ho also determined that Plaintiff had sitting restrictions.

[7] While Plaintiff requests a remand for benefits, ECF No. 10 at 15, the Court finds that inappropriate here. The Court remands this case to the ALJ for further proceedings because the record has not been fully developed, outstanding issues must be resolved before a disability determination can be made, and further

Having already decided remand is necessary, the Court instructs the ALJ to reevaluate the opinions of the other medical sources in light of the entire record and Plaintiff's subjective symptom testimony. To the extent the ALJ finds that the record supports additional impairments, he shall also reevaluate whether Plaintiff's impairments meet or equal listed criteria.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED**.
2. The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.
3. The ALJ's decision is **REVERSED** and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).
4. The Clerk's Office is directed to **ENTER JUDGMENT** in Plaintiff's favor.
5. All pending motions are **DENIED AS MOOT**.
6. All hearings and other deadlines are **STRICKEN**.
7. The Clerk's Office is directed to **CLOSE** this file.

---

administrative proceedings would be useful to remedy the identified defects. *See Leon v. Berryhill*, 880 F.3d 1041, 1045–47 (9th Cir. 2017).

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 29th day of April 2019.

_____
SALVADOR MENDOZA, JR.
United States District Judge